UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

RICHARD DEAN STEIN,

                    Plaintiff,                    Case No. 1:16-cv-1022

v.                                          Honorable Robert Holmes Bell

G. SKIPPER et al.,

                    Defendants.

_____/

## OPINION

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff is presently incarcerated in the Baraga Correctional Facility in Baraga, Michigan. The incidents he describes in the complaint, however, occurred while he was incarcerated in the Michigan Reformatory in Ionia, Michigan. On July 8, 2015, Plaintiff was released from segregation.[1] Previously, he had been housed in Unit I-2 and he had been working as an outside unit porter. When he was released, he was moved to Unit I-3. He was told he could not keep his job.

**Claim 1-Defendant Skipper**

Plaintiff filed a grievance (ECF No. 1, PageID.10), claiming he should not have lost his job. On July 20, 2015, Defendant Deputy Warden G. Skipper responded to Plaintiff's grievance. (*Id.*, PageID.11.) He informed Plaintiff that Plaintiff was moved off Unit I-2 to segregation due to his alleged involvement in drug smuggling. (*Id.*) Defendant Skipper noted that two tickets were written on Plaintiff as he was being placed in segregation. (*Id.*) Defendant Skipper reported that Plaintiff had received tickets for substance abuse and contraband while he was on his job assignment and that he would not be placed back in his job assignment; even though he would be moved back to I-2. (*Id.*)

Plaintiff contends that Defendant Skipper is not telling the truth and falsified documents. He claims that he was never given notice that he lost his job and that the staff is corrupt. Plaintiff has filed suit against Defendant Skipper for his unsatisfactory response to Plaintiff's grievance.

---

[1]This suit relates to the loss of Plaintiff's job as a consequence of his stay in segregation. A companion suit filed the same day, *Stein v. Whitinger et al.*, No. 1:16-cv-1015 (W.D. Mich.), addresses his placement in segregation.

### Claim 2-Defendant Schooley

Defendant Skipper's response to the grievance was reviewed and approved by Defendant Deputy Warden S. Schooley on July 13, 2015. (*Id.*) Accordingly, Plaintiff makes the same allegations against Defendant Schooley that he makes against Defendant Skipper. He has filed suit against Defendant Schooley for his unsatisfactory response to Plaintiff's grievance.

### Claim 3-Defendant Palmer

Plaintiff appealed the step I grievance response. (ECF No. 1, PageID.14.) His appeal asserted that the reasons stated for the loss of his job were untrue. Defendant Warden Carmen Palmer responded to the appeal on September 9, 2015. (ECF No. 1, PageID.15.) Defendant Palmer stated that she found no impropriety on the part of staff and that Plaintiff was, at that time, housed in Unit I-4. According to Defendant Palmer, job assignments simply do not continue once a prisoner is moved to a different housing unit. Plaintiff has filed suit against Defendant Palmer for her unsatisfactory response to his grievance appeal.

### Claim 4-Defendant Marshall

As Plaintiff's grievance was working its way through the system, he sought an answer to the question "Why did I lose my job?" from other staff. He posed that question in a kite to Defendant Classification Director Nancy Marshall. (ECF No. 1, PageID.24.) She responded that jobs do not move unit to unit and Plaintiff had moved from Unit I-2 to Unit I-3 and was, at the time she responded, on Unit I-4. (*Id.*) Plaintiff has filed suit against Defendant Marshall for her unsatisfactory response to his kite.

### Claim 5-Defendant Blumberg

Plaintiff also sought information regarding the loss of his job from Defendant Prisoner Counselor Mr. Blumberg.  Defendant Blumberg had been away on vacation when Plaintiff lost his job, but Defendant Blumberg agreed to investigate anyway.  (ECF No. 1, PageID.26.) Defendant Blumberg told Plaintiff the situation was "a big mess and they expected [Defendant Blumberg] to clean it." (*Id*.)  Defendant Blumberg was unable to discover anything from Defendant Marshall, but Sergeant Houck (not a defendant) told him that Defendant Skipper told her that Plaintiff was not getting his job back due to receiving tickets for substance abuse and contraband while on job assignment. (*Id*., PageID.26-27.)  Although Plaintiff commends Defendant Blumberg for the effort he put in, he believes Defendant Blumberg should have done more.  Plaintiff has filed suit against Defendant Blumberg for failing to pursue further the investigation of Plaintiff's job loss.

### Claim 6-Defendant Russell

Plaintiff appealed Defendant Palmer's step II grievance response.  Plaintiff claimed that Defendant Palmer had failed to respond to his claim that there had been no drug use or contraband and that Plaintiff had moved back to Unit I-2, but he had not received his job back. (ECF No. 1, PageID.14.)  Defendant Richard C. Russell, Manager of the Grievance Section in the Office of Legal Affairs for the Michigan Department of Corrections responded to Plaintiff grievance at Step III on March 22, 2016.  Defendant Russell denied the appeal because Plaintiff's "issue was in fact considered, investigated, and a proper decision was rendered." (*Id*., PageID.31.)  Plaintiff has filed suit against Defendant Russell for his unsatisfactory response to Plaintiff's grievance appeal.

- 4 -

### Claim7-Defendant Mallek

After Plaintiff returned from segregation to Unit I-3 and discovered he had lost his job, he was summoned to the office of Defendant Assistant Resident Unit Supervisor Damon Mallek.  Defendant Mallek asked Plaintiff to sign a Program Classification Report (ECF No. 1, PageID.29), that noted Plaintiff was relocated from Unit I-2 to Unit I-3 and had been removed from his job.  The form included a typewritten statement requesting that Plaintiff be added to job pools. (*Id*.)  There was a spot on the form for the job pools to be listed.  (*Id*.)   Defendant Mallek asked Plaintiff to fill in the job pools he wanted and then sign the form.  (*Id*., PageID.32.)  Plaintiff refused to identify job pools or sign the document because his grievance seeking reinstatement was pending. (*Id*., PageID.32-33.)  Despite additional requests from Defendant Mallek and Defendant Blumberg, Plaintiff would not sign.  (*Id*.)  Defendant Mallek noted the refusal and Plaintiff's reason; he and Defendant Marshall signed the Classification form.  (*Id*., PageID.34.)  Plaintiff has filed suit against Defendant Mallek for failing to investigate Plaintiff's wrongful termination but instead trying to get him to sign the Program Classification Report.

### Claim 8-Defendant Smith

Two months after Plaintiff refused Defendant Mallek's attempt to get Plaintiff to indicate his job pool preferences, Defendant Prisoner Counselor W. Smith made another attempt. He told Plaintiff that Plaintiff needed to be classified.  He told Plaintiff that there were jobs open for a painter and a porter, but that Plaintiff needed to sign the Program Classification Report.  Plaintiff signed the report (ECF No. 1, PageID.36) but he contends he was forced to do so.  Plaintiff does not indicate whether he was offered a job thereafter.  Plaintiff has filed suit against Defendant Smith for making him sign the form.

**Discussion**

I.       Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed

- 6 -

by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

II.    <u>Violations of Michigan Department of Corrections policies</u>

Throughout his complaint, Plaintiff references the defendants' failures to follow departmental policies. Claims under § 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Defendants' alleged failures to comply with an administrative rule or policy do not themselves rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest). Simply claiming violations of Michigan Department of Corrections policies does not suffice to state a claim under § 1983.

Moreover, Plaintiff does not tie the allegations in his eight claims to a particular constitutional right. He notes that defendants violated policy and suggests that the basis for terminating his job is a lie, but he does not reference a specific constitutional right. The closest he

- 7 -

comes is in a string cite of eighteen federal cases under "Section III. Statement of Claims" on the prisoner civil rights complaint form.  (ECF No. 1, PageID.3.)  Sprinkled in the string cite of cases are the following terms: "U.S. Constitution Amendment Six, U.S. Constitution Amendment 14. Abuse of Position: [case cites] Misuse of power. [case cites] First Amendment Rights [case and statutory cites] U.S.C.A. Const. Amend 14 [subject matter "key" cites[2] and case cites.]"  (*Id*.)  Each of the referenced possible constitutional violations is addressed below.

III.   Sixth Amendment

No matter how liberally the Court construes these references, there does not appear to be any claim for violation of Plaintiff's Sixth Amendment rights.  It is to "'criminal prosecutions' . . . alone [that] the explicit guarantees of the Sixth Amendment are applicable."  *Kirby v. Illinois*, 406 U.S. 682, 690 (1972).  There is no such prosecution at issue here.  At most there was a prison disciplinary proceeding and "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."  *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  Moreover, Plaintiff does not complain about procedural defects in any prison disciplinary proceeding; he complains that he lost his job.[3]  Plaintiff's claim for a violation of the Sixth Amendment here is frivolous.

IV.   First Amendment

The First Amendment provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of

---

[2]The key cite topics are: "Constitutional Law Key 272(2), Prison Key 13(7), Constitutional Law Key 257[.]" The key numbers do not match up to the current West Key Number System.

[3]Although it is not clear from Plaintiff's filings in this case, review of Plaintiff's complaint in *Stein v. Whitinger et al.*, No. 1:16-cv-1015 (W.D. Mich.), the case Plaintiff filed regarding his four-day stay in segregation, suggests that Plaintiff's stay in segregation was not the consequence of a prison disciplinary proceeding.

speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. CONST. amend. I. "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Plaintiff's free speech rights are "uncontrovertedly limited by virtue of [Plaintiff's] incarceration." *Thaddeus-X v. Blatter*, 175 F.3d 378, 393 (6th Cir. 1999).

Plaintiff claims that Defendant Mallek denied Plaintiff freedom of speech "by not allowing me the right to ask questions and receive answers." (ECF No. 1, PageID.33.) Plaintiff's allegations of fact, however, demonstrate otherwise. Plaintiff was permitted to ask why he lost his job in face-to-face meetings, kites, and by way of grievance. Despite his stated concern that signing the Program Classification Form would somehow interfere with his pending grievance, *see* (ECF No. 1, PageID.34), he eventually signed, *see* (ECF No. 1, PageID.36), and his grievance proceeded unimpeded, *see* (ECF No. 1, PageID.31).

Plaintiff's complaint, therefore, is not premised on not being permitted to ask questions, it is premised on not receiving answers–or not receiving answers he liked. The right to speak or petition, however, does not include the right to be heard. *Minnesota State Bd. for Community Colleges v. Knight*, 465 U.S. 271, 288 n.10 (1984) (citing *Smith v. Arkansas State Highway Emp., Local 1315*, 441 U.S. 463, 465 (1979) ("The public employee surely can associate and speak freely and petition openly, and he is protected by the First Amendment from retaliation for doing so . . . [b]ut the First Amendment does not impose any affirmative obligation on the government to listen [or] to respond . . . .") (citation omitted)). Plaintiff has simply failed to state a claim for a First Amendment violation.

V.     Fourteenth Amendment

Construed liberally, Plaintiff's reference to the Fourteenth Amendment might indicate a claim that Plaintiff was deprived of his prison job without due process of law.  To allege a procedural due process claim, Plaintiff must identify a protected liberty or property interest of which he has been deprived.  *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) ("Without a protected liberty or property interest, there can be no federal procedural due process claim.") (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).  The Sixth Circuit has consistently found that prisoners have no constitutionally protected liberty interest in prison employment under the Fourteenth Amendment.  *See, e.g.*, *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (district court properly dismissed as frivolous the plaintiff's claim that he was fired from his prison job); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Carter v. Tucker*, No. 03-5021, 2003 WL 21518730, at *2 (6th Cir. July 1, 2003) (same).  Morever, "as the Constitution and federal law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates." *Carter*, 2003 WL 21518730 at *2 (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991), and *James v. Quinlan*, 866 F.2d 627, 629-30 (3d Cir. 1989)).  Under these authorities, Plaintiff fails to state a due process claim arising from the termination of his prison employment.

Alternatively, Plaintiff's complaint might be construed to challenge the process he received in the prison grievance system.  That construction does not change the result.  Plaintiff has no due process right to file a prison grievance.  The courts repeatedly have held that there exists no

constitutionally protected due process right to an effective prison grievance procedure.  *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases).  Michigan law does not create a liberty interest in the grievance procedure.  *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994).  Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process.

VI.   Failure to act

The Sixth Circuit held that where the defendant's only involvement in the allegedly unconstitutional conduct is "the denial of administrative grievances or the failure to act," the defendant cannot be liable under § 1983.  *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  The reason is that there must be active unconstitutional behavior.  Failing to intervene on a prisoner's behalf to remedy alleged unconstitutional behavior does not amount to active unconstitutional behavior by a person who merely denies an administrative grievance.  *Id.*  Plaintiff does not complain that any of these defendants took away his job.  The core of Plaintiff's complaint is that he lost his job unfairly and these defendants failed to remedy that.  That is not active unconstitutional behavior that might give rise to a claim under § 1983.

- 11 -

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: October 26, 2016                    /s/ Robert Holmes Bell
                                           ROBERT HOLMES BELL
                                           UNITED STATES DISTRICT JUDGE